UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.12-61896-CV-COHN/SELTZER
(10-60276-CR-COHN)

JOSE WILSON AYALA,

Movant,

VS.

UNITED STATES OF AMERICA,

Respondent.
_____/

## REPORT AND RECOMMENDATION TO DISTRICT JUDGE

THIS CAUSE is before the Court upon the Motion Under 28 U.S.C. § 2255 to
Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (DE 1),[1] filed by
Jose Wilson Ayala ("Movant"), and was referred to the undersigned pursuant to 28 U.S.C.
§ 636 and Rule 1(e) of the Magistrate Rules of the United States District Court for the
Southern District of Florida. For the following reasons, the undersigned RECOMMENDS
that the Motion (DE 1) be DENIED.

I.    PROCEDURAL HISTORY

On October 28, 2010 a federal grand jury returned a seven-count Indictment
charging Movant, as well as Co-Defendants Jose Alonso Escobar, Juan Luis Sanchez
Valdez, and Marko Roude, with conspiracy and other substantive offenses related to heroin
trafficking. See Indictment (DE 22 – criminal). More specifically, Movant was charged as

_____

[1] Some documents cited herein have been docketed in the underlying criminal
action (10-60276-Cr-Cohn) only, some documents have been docketed in the instant civil
action (12-61896-Civ-Cohn) only, and some documents have been docketed in both.
Except where expressly noted (as criminal docket entries), all docket citations hereafter
refer to the civil action.

follows: Count I - conspiracy to possess with intent to distribute one kilogram or more of heroin, in violation of 21 U.S.C. §§ 841(b)(1)(A) and 846; Count II - distribution of heroin, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C); and Count VII - possession with intent to distribute more than 100 grams of heroin, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B). See id.

On December 6, 2010, Movant entered into a written agreement to plead guilty to Count I of the Indictment, charging a conspiracy to possess with intent to distribute one kilogram or more of heroin. See Plea Agreement ¶ 1 (DE 69 – criminal). On that same date, Movant appeared before the District Court and entered a plea of guilty to Count I of the Indictment. See Plea Hearing at 13 (DE 140 – criminal).

Thereafter, the Probation Office prepared a Presentence Investigation Report ("PSI"), to which Movant raised several objections. See Objections to Pre-Sentence Investigation Report (DE 46 – criminal). On February 25, 2011, the Court conducted a sentencing hearing. See Sentencing Hearing (DE 133 – criminal). After receiving testimony and hearing argument, the Court overruled Movant's objections to a weapons enhancement[2] and a role enhancement, but it sustained Movant's objection to the drug quantity. Id. The resulting total offense level was 37, and the accompanying sentencing range was 210 to 262 months. Id. at 112. The Court proceeded to impose a sentence at

---

[2] More specifically, the Court found that Movant should be held accountable for a firearm located at his brother's home in March 2009, given that the two brothers had been engaged in a drug trafficking conspiracy at that time and that the firearm was located next to 2.4 kilograms of heroin. However, the Court also found that pipe bombs located at Movant's own home would not support a weapons enhancement because it was not probable that the bombs were linked to Movant's drug trafficking activities. Id. at 101-03.

2

the bottom end of the Guidelines range – 210 months' imprisonment. Id. at 119.

On March 4, 2011, Movant filed a notice of appeal (DE 111 – criminal). However, in light of Movant's waiver of appellate rights in his plea agreement, appellate counsel moved to dismiss the appeal, which motion was granted on September 26, 2011 (DE 143 – criminal).

On September 25, 2012, Movant filed the instant Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (DE 1) ("Motion"). Movant claims that he received ineffective assistance of counsel. He predicates his claim on four grounds: (1) counsel failed to effectively advise him concerning his appellate waiver and his exposure under the sentencing guidelines, including the prospect of sentence enhancements; (2) counsel failed to render conflict-free assistance; (3) counsel failed to negotiate a beneficial plea agreement; and (4) counsel never explained the purpose or content of the inaccurate "Stipulated Factual Basis." Id. On March 1, 2013, the Government answered the Motion (DE 10), and on April 4, 2013 Movant replied thereto (DE 18).

The matter is now ripe for decision.

II.    FACTS

A.    Plea Agreement

On December 6, 2010, Movant entered into a written agreement to plead guilty to Count I of the Indictment, charging a conspiracy to possess with intent to distribute one kilogram or more of heroin. See Plea Agreement ¶ 1 (DE 69 – criminal). In turn, the Government agreed to dismiss the remaining two counts against Movant, to recommend a two-level sentencing Guidelines reduction for his acceptance of responsibility, and to

3

move for an additional one-level reduction for his assistance in timely notifying authorities of his intention to plead guilty.[3] See id. ¶¶ 2, 7. The Plea Agreement made clear that the sentence for the offense charged in Count I could range from a minimum of 10 years up to a maximum of life imprisonment. Id. ¶ 4. In the Agreement, Movant also acknowledged his assent to the following terms:

- the Government could inform the Court and the Probation Office "of all facts pertinent to the sentencing process, including all relevant information concerning the offenses committed, whether charged or not" and could "make any recommendation as to the quality and quantity of punishment";

- any estimate of the probable sentencing range he may receive from his attorney "is a prediction, not a promise" and is not binding on the Government, the Probation Office, or the Court;

- the Court could impose any sentence up to the statutory maximum authorized by law;

- Movant could not withdraw his plea solely as a result of the sentence imposed;

- Movant was waiving his right to appeal any sentence imposed;

- Movant was requesting the Court to specifically find that his appeal waiver was knowing and voluntary.

Id. ¶¶ 3, 6, 10, 11.

B.    Plea Colloquy

On the same date he entered into the Plea Agreement, Movant appeared before the

---

[3] The Government's agreement to recommend the additional one-level reduction for Movant's assistance in timely notifying authorities of his intention to plead guilty was conditioned upon his offense level being 16 or greater. Plea Agreement ¶ 7 (DE 69 – criminal). The Government's agreement was further conditioned on Movant's full and complete disclosure of the relevant offense conduct to the probation office, on his accurate representation of the facts to the Government prior to entering into the Plea Agreement, and on his refraining from any misconduct after entering into the Agreement. Id.

Court to plead guilty to Count I of the Indictment. See Plea Hearing (DE 140 – criminal). Movant was placed under oath, and he swore to tell the truth.  Id. at 2.  The Court then asked Movant whether he understood that he was under oath and that any false answer he provided could later be used against him in another prosecution for perjury or making a false statement; Movant responded, "Yes, sir." Id. at 2.

The Court proceeded to engage Movant in a thorough colloquy, first inquiring of his satisfaction with defense counsel:

> THE COURT:  Are you satisfied with the representation and advice given to you in this case by your attorney, Jason Grey?
>
> THE DEFENDANT: Yes.

Id. at 4.

Defense counsel informed the Court that he had discussed with Movant the sentencing Guidelines. Id. at 6.  The Court then confirmed with Movant that he had discussed with defense counsel the application of the advisory Guidelines; Movant responded affirmatively. Id. at 6 ("THE COURT:  And your lawyer mentioned that he's discussed with you how the guidelines might apply in this case. Is that your understanding as well?  THE DEFENDANT: Yes, sir.").  Notwithstanding Movant's confirmation that he had discussed the Guidelines with defense counsel, the Court proceeded to do so independently:

> THE COURT: Do you understand that the Court is required to compute an advisory sentence under the federal sentencing guidelines?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Do you understand that the advisory sentence will be determined by the Court relying in part on a

5

> presentence investigation which is conducted by the U.S. Probation Office?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Do you understand that under certain circumstances, the Court may depart from the advisory guideline range and may either raise or lower the advisory sentence?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Do you understand that the Court is required to consider the advisory guideline range; however, the Court is not bound to impose a sentence within that range.
>
> THE DEFENDANT: Yes.
>
> THE COURT: Do you understand this Court's sentence may be either more severe or less severe than the sentencing guidelines range?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Do you understand that the Court has the authority to impose any sentence up to the statutory maximum authorized by law?
>
> THE DEFENDANT: Yes.

Id. at 7-8. In sum, Movant made clear that he understood the Court could sentence him to any term of imprisonment, up to the statutory maximum; he had been informed that the statutory maximum was life imprisonment. See id. at 5 (responding "yes," when asked if he understood that Court "may impose a sentence of up to life in prison"); Plea Agreement ¶ 4 (DE 69 – criminal) (stating that the statutory maximum is life imprisonment).

Movant further agreed that no promises had been made outside of the Plea Agreement, that he had not been forced or coerced into the Agreement, and that he was entering a guilty plea of his own free will. Plea Hearing at 9 (DE 140 – criminal).

6

The Court then took special care to fully explain the appellate waiver provision of

the Plea Agreement.

> THE COURT: Now, paragraph 10 of the plea agreement contains what is commonly referred to as an appellate waiver, and I would like to review with you the pertinent language of paragraph 10 to make certain that you understand the right that you are giving up therein.
>
> Do you understand in exchange for certain promises made by the government, that you are agreeing to waive, that is to give up, your right to appeal any sentence imposed or to appeal the manner in which the sentence was imposed unless the sentence exceeds the maximum permitted by statute or is the result of an upward departure and/or a variance from the guideline range that the Court establishes at sentencing?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Do you understand that should the government elect to appeal this Court's sentence, you would be released from that appellate waiver?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Have you fully discussed the appellate waiver with [defense counsel]?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Do you have any questions regarding the legal effect of the appellate waiver provision?
>
> THE DEFENDANT: No.
>
> THE COURT: Understanding the legal effect, is it still your desire to go forward with this plea agreement and go forward with the entry of the guilty plea to Count 1?
>
> THE DEFENDANT: Yes.
>
> THE COURT: The Court finds that the defendant, Jose Wilson Ayala, knowingly, intelligently, and voluntarily waived his right to appeal [the] sentence in accordance with the language

7

contained in paragraph 10 of the plea agreement.

Id. at 9-10. In sum, Movant told the Court under oath that he understood the appellate waiver, that he had discussed it with his attorney, and that he had no questions. Id. at 10. Furthermore, Movant made clear that he wished to proceed under the terms of the Agreement and to enter a guilty plea to Count I. Based upon this exchange, and pursuant to the parties' request, the Court made a specific finding that Movant had "knowingly, intelligently, and voluntarily waived his right to appeal [the] sentence." Id.

The Court subsequently reviewed with Movant the jury trial rights he was waiving by entering his guilty plea, and Movant acknowledged that he understood. Id. at 10-12.

The parties then submitted to the Court a signed "Stipulated Factual Basis" in support of the plea, which essentially tracked the language of Count I. Compare Indictment at 1-2 (DE 22 – criminal) with Stipulated Factual Basis at 1-2 (DE 70 – criminal).

> From approximately March of 2009 and continuing through October 14, 2010, the defendant was a member of a drug trafficking organization together with co-defendants, Jose Alonso Escobar, a/k/a "Colombia," a/k/a "Flaco," Juan Luis Sanchez Valdez, Marko Roude, and others. This drug trafficking organization operated in and was responsible for distributing heroin in Broward County and Miami-Dade County, Florida within the Southern District of Florida.
>
> Throughout the course of the conspiracy the defendant admits and agrees that he knowingly and intentionally combined, conspired and agreed with co-defendants, Jose Alonso Escobar, a/k/a "Colombia," a/k/a "Flaco," Juan Luis Sanchez Valdez, Marko Roude, and others to possess with intent to distribute heroin and that he was responsible for the distribution of well over one (1) kilogram of heroin.

Id. When the Court asked Movant whether these stipulated facts had been read to him and whether he "underst[ood] all the facts as read to [him]," he replied, "yes." Plea Hearing

8

at 12 (DE 140). Movant again replied "yes" when asked whether he "agree[d] that the facts as read to [him] were all true and correct. Id. Further, Movant replied, "no, sir," when asked by the Court whether he had any questions about the proceedings. Id. at 13.

Finally, when the Court asked Movant how he wished to plea to Count I of the Indictment, he replied: "guilty." Id. The Court found that Movant was competent and capable of entering an informed plea, that he was aware of the nature of the charge and the consequences of his plea, and that his guilty plea was knowingly and voluntarily given and was supported by an independent basis in fact containing each of the elements charged in Count I. Id. The Court then accepted the plea and adjudicated Movant guilty. Id.

### C.    Presentence Investigation Report

On January 21, 2011, the Probation Office disclosed its Presentence Investigation Report ("PSI"). The PSI's Guidelines computation set the base offense level at 36 (premised upon at least 10, but less than 30 kilograms of heroin), which it increased by 2 levels for possession of a dangerous weapon and by 4 levels for a leadership role, and then reduced by 2 levels for acceptance of responsibility and an additional 1 level for timely notification of intent to plead guilty – yielding a total offense level of 39. See PSI ¶¶ 46-55. Coupling an offense level of 39 with a criminal history category of I yielded a sentencing range of 262 to 327 months. Id. ¶ 90. On February 11, 2011, Movant filed objections to the PSI, arguing that the Probation Office erred in denying him "safety valve" eligibility, in computing the drug quantity, in setting the base offense level at 36, and in enhancing the sentence for a weapon and for a leadership role. See Objections (DE 96 – criminal). The Government responded to the objections on February 24, 2011 (DE 102 – criminal).

D.    Sentencing Hearing

On February 25, 2011, the Court held a sentencing hearing.  See Sentencing Hearing (DE 133 – criminal).

1.    Testimony

At the hearing, the Government presented the testimony of DEA Agent David Weeks ("Weeks"). According to Weeks, on March 27, 2009, police responded to a robbery at the home of Movant's brother, Juan Ayala ("Juan"). Id. at 9. Upon arriving, police searched Juan's home and discovered the following: approximately 2.4 kilograms of heroin and a handgun (inside a dog pen); and drug ledgers and drug paraphernalia, including syringes, grinders to cut or grind heroin, and plastic bags commonly used to distribute heroin and bearing a green alien logo (throughout the house). Id. at 13-15, 18. The drug ledgers showed that beginning on January 26, 2009, payments had been made to "Juni" or "Juanito," aliases used by Movant. Id. at 19-22.  Juan was subsequently convicted of narcotics violations and is now serving a term of imprisonment. Id. at 25.

The DEA then began investigating Movant's drug trafficking organization ("DTO"). Agents arranged controlled purchases of heroin from members of the DTO, including two purchases from Movant himself. Id. at 46. Agents also secured a Title III wiretap of the DTO. Id. at 45. The wiretap confirmed information obtained from confidential sources that Movant had become the leader of the DTO following Juan's arrest.[4]

---

[4] Among the wire intercepts was a long and detailed conversation involving a co-defendant, Jose Escobar, who worked for Movant. During this conversation, Escobar complained about the amount of money he was getting paid for the heroin distribution, the number of days he was forced to work, and managerial differences between Juan and Movant. Government's Answer at 5 (DE 10).

10

According to Weeks, on July 17, 2009, Davie (Florida) police responded to another home invasion, this time at Movant's home. Id. at 31. When police arrived, they encountered the victims of the invasion, Mr. Munoz and Jose Escobar (co-defendant) inside the home; the assailants, however, had fled. Movant returned home some time later. Officers subsequently searched Movant's home and discovered small plastic bags marked with green alien logos, consistent with the bags found in Juan's home. Id. at 33. Officers also discovered a scale and a blender, both used in preparing heroin for distribution, and a firearm; it was unclear whether the firearm belonged to Movant or to an assailant. Id. at 32, 34. Additionally, officers found five pipe bombs inside Movant's bedroom. Id. at 36-37. Movant was arrested at the scene. Id. at 40.

Weeks also testified to the post-arrest statements of a co-defendant, Marko Roude ("Roude"). According to Weeks, Roude disclosed that Movant had hired him in August 2009 to work for the DTO. Id. at 60. Roude also told agents that Movant had "stepped up" to a leadership position within the DTO following Juan's arrest. Id. at 63. Additionally, Roude confirmed that "Juanito" was an alias used by Movant. Id. at 61.

Weeks provided testimony as to the quantity of heroin attributable to the DTO. He stated that 2.4 kilograms of heroin were seized from the home of Juan Ayala. In addition, 9.7 grams of heroin were seized as a result of 4 controlled buys from the DTO, 308 grams of heroin were seized from the DTO's stash house, and another 308 grams were seized from a hidden compartment of a Nissan Maxima utilized by the DTO to distribute heroin. Id. at 55.[5]

---

[5] According to the post-arrest statements of Co-Defendant Marko Roude, the DTO was responsible for distributing the following quantities of heroin during the time frame of

11

Defense counsel then engaged Weeks in cross-examination. See id. at 70-83. Counsel, however, elected not to present any evidence at the sentencing hearing. Id. at 86.

### 2.    Defense Counsel's Arguments

In writing and, again, in court, defense counsel made several arguments in support of a lower sentence. See Objections to Pre-Sentence Investigation Report (DE 96 – criminal); Sentencing Hearing (DE 133 – criminal). First, he argued against enhancing Movant's sentence for dangerous weapons or firearms; he asked the Court not to consider the gun discovered in Juan's home as a basis for enhancing Movant's sentence. Id. at 87. Counsel asserted that no conspiracy had been established between Movant and Juan, and he noted that the gun discovered in Juan's home had not triggered an enhancement of Juan's own sentence. Id. at 87-88. Counsel also argued that the pipe bombs found in Movant's home should not support an enhanced sentence, as no link had been established between the pipe bombs and the drug offenses. Id. at 89.

Defense counsel next argued against the quantity of heroin the Government sought to attribute to the DTO. Specifically, counsel challenged the reliability of Co-Defendant Marko Roude's statements concerning the amount of heroin involved in the conspiracy. Counsel argued that the base level should not be set at 36 (at least 10, but less than 30 kilograms), as urged by the Government and recommended in the PSI; rather, he argued

---

the conspiracy: approximately 2 to 3 ounces of heroin per day from August 2009 to January 2010; approximately 1.5 to 2 ounces of heroin per day from January 2010 to June 2010; and approximately 1 ounce every 2 to 3 days from September 2010 to October 2010 (DE 102 at 11-12).

The Government argued that a conservative estimate of the drug quantity attributable to Movant during the pertinent time frame was 12.992 kilograms.

that the base offense level should be 32 (at least 1, but less than 3 kilograms).

Counsel further argued against Movant receiving a four-point adjustment for serving as a leader or organizer of the charged conspiracy. He maintained that there were no facts in the plea or in the record to suggest that Movant played such a role in the conspiracy. See Objections at 7-8 (DE 96).

Finally, counsel argued that Movant should have the benefit of the so-called "Safety Valve," as he did not possess a firearm or serve as a leader of others in the offense. Id. at 8.

In sum, counsel argued that his total offense level should be 27, predicated on a base offense level of 32, then reduced by 2 levels for acceptance of responsibility, by 1 level for timely notification of the guilty plea, and by 2 more levels for "Safety Valve" eligibility. Id. at 9. So calculated, the sentencing range would be 70 to 87 months. Id.

### 3.     District Court's Sentencing Decision

The Court initially found that the conspiracy involved at least 10 kilograms of heroin, which would have set the base offense level at 36. Sentencing Hearing at 104 (DE 133 – criminal). However, after considering the arguments of defense counsel, the Court amended its finding and sustained, in part, counsel's objection. The Court found that only between 3 and 10 kilograms of heroin were shown to be attributable to the conspiracy, lowering the base offense level to 34. The Court, therefore, rejected the 12.992 kilograms urged by the Government, as well as the 1 to 3 kilograms urged by defense counsel. Id. at 110.

With respect to the dangerous weapons, the Court found that Movant's involvement in the conspiracy had begun in March 2009 and that the gun seized from Juan's home that

13

month had been found next to 2.4 kilograms of heroin. Id. at 101-02. The gun, therefore, was attributable to the narcotics conspiracy, of which Movant was a member, and it was properly the basis for a two-level enhancement. Id. at 101. The pipe bombs, however, were not considered; the Court deemed it improbable that they would be linked to Movant's drug trafficking activities. Id. at 101-02. Based upon the gun found at Juan's home, therefore, the Court found that the Government had met its burden of proof as to a weapons enhancement and increased Movant's offense level by two. Id. at 103.

With respect to the leadership enhancement recommended in the PSI, the Court overruled Movant's objection. The Court concluded that the Government had presented sufficient evidence to establish that Movant had been an organizer or leader of criminal activity that involved five or more participants or that was otherwise extensive. Id. at 111-12. Accordingly, the Court increased Movant's offense level by four based on his leadership role in the offense.

In sum, the Court overruled Movant's objections to the weapons and leadership enhancements but sustained, in part, Movant's objection to the drug quantity. Id. The Court also reduced Movant's offense level by two for acceptance of responsibility and then by one more for timely notification to authorities of the intention to plead guilty. These findings yielded a total offense level of 37, which, coupled with a criminal history category of I, lowered Movant's sentencing range from 262 to 327 months (as recommended in the PSI) to 210 to 262 months. Id. at 112.

The Court then proceeded to sentence Movant to the bottom end of the advisory

14

Guidelines range – 210 months' imprisonment.[6] Id. at 118; Judgment (DE 108 – criminal).

## III. THE MOTION UNDER § 2255

### A. Grounds for Relief

Movant claims that his conviction and sentence should be vacated because defense counsel rendered ineffective assistance. He raises four grounds in support of his claim.

Movant first argues that his guilty plea was not voluntarily entered because counsel had failed to advise him of the meaning or effect of the appellate waiver; Movant had been led to believe that the waiver would be beneficial, not harmful. Motion at 4 (DE 1). According to Movant, counsel also failed to explain his sentencing exposure under the Guidelines, and he never stated that his sentence could be enhanced on the basis of a firearm (seized from Juan's home) or a leadership role; Movant believed that the Government would not seek certain sentencing enhancements or that the enhancements would not apply. See id.

Movant next argues that defense counsel labored under a conflict of interest, given

_____

[6] The undersigned notes that defense counsel repeatedly asked the Court to impose upon Movant a sentence of the same length as that previously imposed (by a different court) upon Juan – 120 months. Although the Government acknowledged that Juan's sentence had not been enhanced, it argued that the failure to seek a weapons enhancement had been a mistake and that Movant should not benefit from that mistake. Id. at 101. The Court acknowledged the disparity but made clear that it is required under the law to arrive at its own determination. The Court then found that in this case the Government had satisfied its evidentiary burden of showing by a preponderance of the evidence that the firearm discovered at Juan's home was connected to the narcotics conspiracy and that Movant was a member of that conspiracy. Id. at 103.

With respect to a leadership enhancement, the Government explained that it did not seek such an enhancement in Juan's case because it was not then aware of the extent of the DTO. Id. at 98. The Court found by a preponderance of the evidence that Movant had been a leader or organizer of a criminal organization of five or more individuals or that was otherwise extensive. Id. at 112.

15

his previous representation of Movant's brother, Juan. According to Movant, the conflict prevented counsel from employing "evidence available from Juan to show the error of the [G]overnment's evidence used to enhance [M]ovant's sentence." Id. at 5.

Movant then argues that defense counsel rendered ineffective assistance with respect to the plea negotiations and that the resulting Plea Agreement provided him no benefit. Further, Movant argues that the Agreement required him to relinquish his appellate rights but did not require the Government to relinquish anything. Because he had relinquished his appellate rights under the Agreement, he was precluded from appealing the sentencing enhancements or any other errors on the part of the District Judge. Id. at 7.

Movant's final argument is that counsel was ineffective in explaining the purpose or content of the stipulated factual basis for the plea. Movant submits that certain stipulations are not "fairly supported by the facts and the law." Id. at 8.

### B.   Law Governing Ineffective Assistance of Counsel Claims

A criminal defendant's Sixth Amendment right to effective assistance of counsel extends to challenges to guilty pleas. Hill v. Lockhart, 474 U.S. 52, 58 (1985). In Strickland v. Washington, 466 U.S. 668, 687-88 (1984), the Supreme Court held that "the proper standard of attorney performance is that of reasonably effective assistance" and that the burden is on a movant seeking habeas relief to demonstrate that "counsel's representation fell below an objective standard of reasonableness." The Strickland Court set forth a two-pronged test for evaluating claims of ineffective assistance.

First, a movant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id.

at 687. The test to determine whether an attorney's performance was deficient "has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. [The test is] only whether some reasonable lawyer . . . could have acted, in the circumstances, as defense counsel acted . . . ." White v. Singletary, 972 F.2d 1218, 1220 (11th Cir. 1992) (citing Strickland, 466 U.S. at 689). And "[e]ven if many reasonable lawyers would not have done as defense counsel did . . . , no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so." Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994). In assessing counsel's performance, a court must avoid second-guessing with the benefit of hindsight and must presume that the performance of counsel was reasonable and adequate. Strickland, 466 U.S. at 689; see also Rogers, 13 F.3d at 386. Because a wide range of performance is constitutionally acceptable, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." Rogers, 13 F.3d at 386.

The second prong of the Strickland test requires a movant to show that the deficient performance resulted in actual prejudice. Strickland, 466 U.S. at 687, 693; see also Wiley v. Wainwright, 709 F.2d 1412, 1413 (11th Cir. 1983) (explaining that movant must show "actual and substantial prejudice"). To demonstrate prejudice, a movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. And where the ineffective assistance claim is rooted in a challenge to a guilty plea, a movant must show "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 52, 59.

17

Significantly, a court need not "address both components of the inquiry if the [movant] makes an insufficient showing on one." Strickland, 466 U.S. at 697. Accordingly, "[a] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the [movant] as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which . . . will often be so, that course should be followed." Id.

C. Discussion

1. Appellate Waiver and Sentencing Exposure

Movant argues that his conviction and sentence should be vacated because his trial counsel did not properly explain to him the effect of his appellate waiver, the exposure he faced upon sentencing, or his prospective sentencing enhancements. The undersigned, however, is not persuaded.

With respect to the appellate waiver, Movant alleges:

> Counsel did not advise movant concerning the meaning or effect of the "appellate waiver" for purposes of plea and sentencing. Counsel mistakenly advised that this waiver was beneficial when it could only harm movant. Counsel did not adequately explain the contents of the plea agreement, specifically the waiver of appeal of all forms of sentencing error and thus waiver of all enforceable sentencing guideline rights, including as to sentencing for the unknown conduct of others. The waiver was damaging given disputed sentencing enhancements counsel should reasonably have anticipated or explicitly known would be filed.

Motion at 4 (DE 1) (emphasis added). Movant's allegations are self-contradictory. With respect to the same appellate waiver, Movant at once alleges that counsel did not advise, that counsel mistakenly advised, and that counsel did not adequately advise. Yet, even discounting the contradictions, the underlying contention would fail.

18

The allegations against defense counsel are not set forth in a statement sworn to by Movant but in a Motion and in a Reply written by Movant's current counsel. In addition, the allegations are generally vague and devoid of specifics or factual content. Most importantly, the allegations contrast sharply with the sworn statements that Movant made to the District Court at the change of plea hearing. At the outset, the Court advised Movant of the significance of his oath to testify truthfully and of the consequence for its violation. Movant acknowledged his understanding of the Court's advice. Plea Hearing at 2 (DE 140 – criminal). Movant then swore that he had fully discussed the appellate waiver with defense counsel, that he understood the legal effect of the waiver, and that he had no questions. Id. at 10. The Supreme Court has declared that although such sworn statements are "not invariably insurmountable" in a collateral proceeding, they are nonetheless presumed to be true and have been characterized as "imposing." See Blackledge v. Allison, 431 U.S. 63, 74 (1977). The Blackledge Court explained:

> [T]he representations of the defendant, his lawyer, and the prosecutor at [a change of plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

Id. at 73-74 (citations omitted).

Given his sworn statements to the Court at the plea hearing, Movant now faces a "formidable barrier" to have the same Court discount those statements. Yet, he has not proffered any facts tending to show that his sworn statements were the product of mistake, or of duress, or even of fraud – no facts tending to prove that he somehow had

19

misunderstood counsel's explanation of the appellate waiver, or that he agreed to the appellate waiver while under duress, or even that counsel had affirmatively misrepresented the meaning of the appellate waiver. See id. at 75 & n.6 (stating that courts cannot "adopt per se rule excluding all possibility that a defendant's representations at the time his guilty plea was accepted were so much the product of such factors as misunderstanding, duress, or misrepresentation by others" and analogizing to parol evidence rule that permits a denial of additional agreements to be set aside on grounds of fraud, mistake, or duress). Movant's unsworn allegations – be it that counsel failed to advise, and/or mistakenly advised, and/or inadequately advised – as to the appellate waiver, fail to overcome the strong presumption of verity that attach to his sworn statements at the plea hearing.

Moreover, Movant cannot show that he suffered actual prejudice with respect to the appellate waiver. Even if defense counsel had actually neglected to explain the appellate waiver, the District Court nonetheless took it upon itself to do so, plainly and directly. See Plea Hearing at 9-10 (DE 140) (explaining meaning and effect of appellate waiver). Movant responded that he understood the waiver, that he had no questions concerning the waiver, and that he still wished to plead guilty. Id. at 10-11. Movant has not suggested any reason to discount, let alone to disregard, that dialogue. Absent adequate reason to do, the Court must be able to rely upon that dialogue. See United States v. Lambey, 974 F.2d 1389, 1395 (4th Cir. 1992) ("[I]f the information given by the court at the Rule 11 hearing corrects or clarifies the earlier erroneous information given by the defendant's attorney and the defendant admits to understanding the court's advice, the criminal justice system must be able to rely on the subsequent dialogue between the court and defendant."). The undersigned, therefore, concludes that the Court's explanation cured counsel's failure –

20

if any – to explain the appellate waiver.

Movant's companion argument is that defense counsel also failed to explain his Guidelines sentencing exposure; this argument too is unavailing. Movant claims that he "expected a sentence equal to the 120 month sentence imposed upon [his] brother" and that he "was never informed of the potential enhancements under the sentencing guidelines." Motion at 4 (DE 1) (emphasis added). First, Movant's sentencing expectations are not relevant to the Motion. Even if defense counsel had told Movant that he anticipated a sentence equivalent to Juan's, such a "miscalculation or erroneous sentence estimation" would not constitute deficient performance. See United States v. Gordon, 4 F.3d 1567, 1570 (10th Cir. 1993) (holding that a defendant was unable to show deficient performance where counsel failed to predict that relevant conduct would be included in defendant's offense level calculation). Further, Movant informed the Court that no promises had been made to him, beyond those set forth in the Plea Agreement. Plea Hearing at 9 (DE 140 – criminal). Here, the Agreement left the sentence open to the Court's discretion; it contained no mention of a specific sentence, let alone 120 months. See Plea Agreement (DE 69); see also Lambey, 974 F.2d at 1395-96 ("It was precisely because of the complexity in the application of the Sentencing Guidelines that [the defendant] was warned not to rely on estimates. Indeed, his plea agreement included acceptance by him of an open sentence to be determined by the court later."). Most importantly, Movant confirmed his understanding that the Court could impose upon him any sentence up to the statutory maximum of life imprisonment. Id. at 7-8.

Movant also contends that defense counsel never explained the Guidelines enhancements, more specifically, that the Court could impose a higher sentence – here,

21

210 months – due to the recovery of a firearm and due to his role in the organization. Once again, this contention is belied by the record. First, Movant was placed on notice by the Government (in the Plea Agreement) that it not only "could inform the [C]ourt and the [P]robation [O]ffice of all facts pertinent to the sentencing process, including all relevant information concerning the offenses committed, whether charged or not, as well as concerning [Movant] and [Movant's] background," but also that it could "make any recommendations as to the quality and quantity of punishment." Plea Agreement at 2-3 (DE 69). After signing this Agreement, Movant confirmed that he had discussed with counsel the operation of the sentencing Guidelines, as well as the application of the Guidelines to his case. Id. at 6. Defense counsel similarly made clear to the Court that he had discussed the sentencing Guidelines with Movant. Id. Yet, even if defense counsel had never told Movant that he could receive a longer sentence due to the gun and his leadership role, Movant was placed on notice by the Court that the Probation Office would investigate the matter and prepare a report that would be relied upon in determining the sentence, that the sentencing Guidelines are advisory only, and that any sentence up to and including the statutory maximum of life imprisonment could be imposed. Id. at 6-7.

In sum, having been provided every critical warning in the clearest terms – the Government would inform the Probation Office of all relevant information concerning the offenses (whether charged or not); the Probation Office would prepare a report that would be relied upon in determining the sentence; the Guidelines are advisory only; the Government was free to make any recommendation as to the length of sentence; and the Court could ultimately impose a sentence up to and including life imprisonment – Movant's claim of ignorance rings hollow. He cannot now credibly claim he was unaware that the

22

Court could sentence him to 210 months or that in doing so it could consider his leadership role and the gun discovered next to the 2.4 kilograms of heroin.

Finally, Movant contends that had defense counsel correctly advised him of his sentencing exposure and that his sentence could be increased or enhanced due to the gun and his leadership role, he "would not have accepted the plea agreement and would have either pled open to the court or proceeded to trial." Reply at 9 (DE 18). Again, to credit this contention, the undersigned would have to disregard the Government's disclosures in the Plea Agreement, Movant's sworn statements at the plea hearing, and the Court's thorough explanation of the appellate waiver and the sentencing exposure, as well as Movant's acknowledgment of understanding. Movant has not suggested any reason, nor is any reason apparent, why the undersigned should disregard Movant's sworn statements. These statements rebut the allegation that counsel failed to explain the sentencing exposure. In addition, Movant has not explained why the undersigned should also disregard the Court's thorough explanations. These explanations made plain to Movant that he could be sentenced up to life imprisonment.

Yet, even were the undersigned to completely disregard the record of the plea hearing, Movant still could not establish actual prejudice – "a reasonable probability that, but for counsel's [failure to explain the prospective enhancements], he would not have pleaded guilty and would have insisted on going to trial," Hill, 474 U.S. at 59, or, as Movant also suggests, would have pled "open to the court." Reply at 9 (DE 18). To support his suggestion that he would have pled "open to the court," Movant asserts that in doing so he still "could have received" a two-level reduction for acceptance of responsibility, but without having to waive his appellate rights. Motion at 7 (DE 1); Reply at 7 (DE 18). Although

23

Movant is correct that he "could have received" a two-level reduction on an open plea, he would not have been entitled to such a reduction. See USSG § 3E1.1(a) comment. (n. 3) ("A defendant who enters a guilty plea is not entitled to an adjustment under this section as a matter of right."). The decision whether to grant the two-level reduction is discretionary with the Court. See USSG § 3E1.1(a) comment. (n. 5) ("The sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility."). Pursuant to the Plea Agreement, the Government had affirmatively recommended to the Court that Movant receive an acceptance of responsibility adjustment, a recommendation that would not have been assured on an open plea.

Moreover, on an open plea, the Government would have been under no obligation (as it was under the Plea Agreement) to move for an additional one-level reduction for timely notification of the intent to plead guilty. See USSG § 3E1.1(b) comment. (n. 6) (stating that "an adjustment under subsection (b) may only be granted upon a formal motion by the Government at the time of sentencing"). Absent such a Government motion, Movant's total offense level would have been 38, rather than 37, and the bottom of the range to which he could have been sentenced would have been 235, rather than 210, months – that is, more than two years longer. The undersigned does not find it at all likely – there is not a "reasonable probability" – that a rational defendant in these circumstances would have been willing to add, at a minimum, more than two years to his sentence based on the mere prospect that a District Court might commit a sentencing error of such dimension as to warrant reversal on appeal. Indeed, had Movant actually pled open to the Court in this matter, given the wealth of evidence in the record, he would not have been able to establish any sentencing error – with respect to the time frame of the conspiracy,

with respect to Movant's membership in the conspiracy, with respect to the weapon recovered from Juan's home, with respect to the quantity of heroin, with respect to Movant's leadership role, or with respect to any other factual finding – let alone such "clear error" as to warrant reversal on appeal. See 18 U.S.C. § 3742(e) (stating that "court of appeals . . . shall accept the findings of fact of the district court unless they are clearly erroneous"); United States v. Williams, 340 F.3d 1231, 1234-35 (11th Cir. 2003) (stating that Eleventh Circuit "precedent clearly . . . requir[es] us to review district courts' factual findings under a 'clear error' (or 'clearly erroneous') standard") (citations omitted); see also United States v. Alred, 144 F.3d 1405, 1416 (11th Cir. 1998) (stating that "[a] district judge's attribution of drugs to a particular defendant under the Sentencing Guidelines is subject to clearly erroneous review"); United States v. Geffrard, 87 F.3d 448, 452 (11th Cir. 1996) (stating that "[p]ossession of a firearm for sentencing purposes is a factual finding . . . reviewed under a clearly erroneous standard"). Here, each of the Court's factual findings was well-grounded in the record.

Movant's alternative suggestion – he would have proceeded to trial had he been properly counseled – is even less probable than an open plea. At trial, the Government would have introduced overwhelming evidence of Movant's heroin trafficking, including, but not limited to: controlled heroin purchases from members of the DTO; controlled heroin purchases from Movant himself; an array of items utilized in heroin distribution seized from Movant's own home; a gun, drug paraphernalia, and a large quantity of heroin, as well as drug ledgers bearing Movant's nickname, all seized from Juan's residence; heroin recovered from the DTO's stash house; heroin recovered from one of the DTO's vehicles; wire intercepts of the DTO's cell phone, including discussions comparing the managerial

styles of Movant and Juan; and a co-defendant's incriminating statement or testimony describing Movant's role in the DTO. Furthermore, had Movant proceeded to trial and been convicted, he would not have benefitted from the three-level reduction that he received from the Court – two for acceptance of responsibility and one (upon the Government's motion) for timely notification. Movant's total offense level would then have been 40, and his sentencing range would have been 292 to 365 months. His sentence, therefore, would have been at least 82 months longer. The notion that Movant would have proceeded to trial in the face of such overwhelming evidence and with resulting likelihood of a conviction and a far more severe sentence is not only improbable, but plainly implausible.

In sum, even if the undersigned were to disregard the plea proceedings, Movant could not show that he suffered actual prejudice by virtue of counsel's alleged failure to adequately explain the prospective sentencing enhancements. Stated differently, there is not a "reasonable probability" that Movant would have proceeded to trial or pled open to the court had counsel told him he could receive a higher sentence due to the gun and his leadership role.

          2.     Conflict of Interest

Movant argues that because defense counsel had previously represented Juan, counsel labored under a conflict of interest that prevented him from introducing exculpatory evidence with respect to Movant's sentencing enhancements and that impeded his ability to render appropriate advice as to the sentencing exposure. Motion at 5 (DE 1). To prevail on an ineffective assistance claim predicated on an alleged conflict of interest, "a defendant who raised no objection at trial must demonstrate that an actual conflict of

26

interest adversely affected his lawyer's performance." Culyer v. Sullivan, 446 U.S. 335, 348 (1980) (emphasis added). Prior to filing the instant Motion, Movant never hinted at, let alone objected to, any conflict of interest. Indeed, during the plea hearing, the Court specifically asked Movant if he was satisfied with defense counsel's advice and representation, and Movant responded affirmatively. Plea Hearing at 4 (DE 140 – criminal). Having previously raised no objection, Movant must therefore identify an actual conflict that adversely affected his counsel's performance; Movant has not done so.

Movant asserts that a conflict prevented counsel from "employing . . . evidence available from Juan to show the error of the [G]overnment's evidence" and that counsel's ability to argue for Movant was impaired with respect to the quantity of drugs involved, Movant's role within the organization, and Movant's connection to the firearm recovered from Juan's home. Motion at 5 (DE 1). Despite such vague and conclusory assertions, Movant has not identified any evidence that defense counsel was foreclosed from "employing" or any argument he was foreclosed from making. The record actually supports a contrary conclusion.

In his opposition to the PSI and, again, at the sentencing hearing, defense counsel argued zealously on Movant's behalf – and with some success – raising every reasonable objection to the sentence urged by the Probation Office and by the Government. Counsel argued strongly against enhancing the sentence based upon the gun found at Juan's home, as well as the pipe bombs found at Movant's home. The Court did find that the gun found at Juan's home was related to the narcotics conspiracy, and therefore grounds for a weapons enhancement. However, the Court agreed with defense counsel and declined to find that the pipe bombs were tied to the conspiracy. Sentencing Hearing at 101-02 (DE

27

133 – criminal). Moreover, defense counsel argued successfully against the Court's accepting the Government's estimation of the drug quantity, and his arguments resulted in a reduction of the base offense level by 2.[7] Id. at 111. Finally, defense counsel objected to and argued against a role enhancement, although he ultimately could not overcome the strong evidence of Movant's leadership of the DTO. Id. at 110-12. Because Movant has not shown that defense counsel's previous representation of Juan in any fashion foreclosed him from introducing evidence or advancing persuasive arguments on Movant's behalf, Movant cannot establish an actual conflict.

Finally, Movant asserts that counsel's prior representation of Juan impeded his ability to evaluate the case and to advise him properly concerning the prospective sentence. See Motion at 5 (DE 1); Reply at 6 (DE 18). However, the assertion that counsel's representation of Juan affected his ability to assess Movant's case does not support the conclusion that counsel actually represented conflicting interests. Further, even if counsel's prior representation of Juan influenced his prediction of Movant's sentence, it is immaterial to the Motion. "[A] defense attorney's erroneous calculation and prediction of the sentencing guidelines is not a basis for setting aside a guilty plea." United States v. Hicks, 4 F.3d 1358, 1363 n.3 (6th Cir. 1993). Moreover, the District Court independently informed Movant, and Movant in turn acknowledged his understanding, that

---

[7] Given that Movant was sentenced at a total offense level of 37 (210 to 262 months), had defense counsel not obtained from the Court a 2-level reduction for the narcotics quantity, Movant would have been sentenced at a total offense level of 39 (262 to 327 months). The Court imposed upon Movant the shortest sentence permitted at level 37 – 210 months. By contrast, the shortest sentence permitted at level 39 would have been 262 months. Accordingly, but for defense counsel's successful argument, Movant's sentence would have been at least 52 months longer.

it could impose any sentence, up to and including the statutory maximum of life imprisonment.

### 3.    Ineffective Assistance During Plea Negotiations

Movant's third argument is that counsel rendered ineffective assistance in negotiating and advising him as to the Plea Agreement. Motion at 8 (DE 1). He asserts that the only benefit he received from the Agreement was the offense reduction for acceptance of responsibility, which he "could have received by pleading guilty straight up to the indictment without waiving any appellate rights." Id. Movant adds that he suffered prejudice by then being precluded from appealing the sentencing enhancements. Id. Movant's argument, however, is unavailing.

As previously noted, see supra at 23, Movant is incorrect in asserting that the only benefit he received from the Plea Agreement was a reduction for acceptance of responsibility. By entering into the Agreement, Movant received from the Government the assurance not only that it would recommend a two-level reduction for acceptance of responsibility, but also that it would exercise its exclusive right to move for an additional one-level reduction for timely notification. Absent such a motion, the additional one-level reduction would not have been a sentencing option. See USSG § 3E1.1(b) comment. (n. 6). Here, the Government's motion, coupled with the Court's assent, effectively reduced Movant's total offense level from 38 to 37, a difference (at the bottom of the range) of 25 months. See Plea Agreement ¶ 7 (DE 69 – criminal). Contrary to Movant's assertion, therefore, defense counsel negotiated an Agreement that lowered his sentence by at least two years, as compared to the lowest sentence that could have been imposed on an open plea.

Furthermore, even if Movant had not received any benefit from the Agreement, his argument would still fail; he cannot show that he suffered actual prejudice under the Agreement. Citing Lafler v. Cooper, 132 S. Ct. 1376, 1385 (2012), Movant submits that to establish prejudice, he need only show a reasonable probability that had he pled open to the court, the sentence "would have been less severe" than the sentence actually imposed. Reply at 8 (DE 18).[8] Assuming, arguendo, that this were the appropriate standard, Movant has not explained how his sentence on an open plea would have been less severe than the sentence imposed under the Plea Agreement. Had he actually pled open to the Court, the Government still would have sought the enhancements, yet Movant would not have been assured either a Government recommendation for a two-level acceptance of responsibility reduction or a Government motion for a one-level timely acceptance reduction; Movant's sentence, therefore, could not have been less severe. Nor

---

[8] The undersigned does not believe that Lafler provides the appropriate standard here. In Lafler, the Supreme Court sought to determine "how to apply Strickland's prejudice test where ineffective assistance results in a rejection of the plea offer and the defendant is convicted at the ensuing trial." 132 S. Ct. at 1384 (emphasis added). The Court stated that "[h]aving to stand trial, not choosing to waive it, is the prejudiced alleged" and that a movant must show that "but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court . . . , that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." Id. at 1385.

In this matter, however, Movant did not reject a plea offer and proceed to trial. Rather, Movant claims that counsel's ineffective assistance led to an improvident acceptance of a plea agreement. That was the claim before the Court in Hill v. Lockhart, 474 U.S. 52. In Hill, the Court required a movant to show "that there is a reasonable probability that, but for counsel's errors, [the movant] would not have pleaded guilty and would have insisted on going to trial." Id. at 59. For the reasons discussed, supra at 23-26, Movant cannot show a "reasonable probability" that, but for counsel's advice with respect to the Plea Agreement, he would have proceeded to trial or would even have pled open to the Court.

could his sentence have been less severe had he proceeded to trial and been convicted, but then not been eligible for any reductions. See discussion supra at 25. Finally, despite his contention that he suffered prejudice by waiving his appellate rights, Movant has not shown that he would have had any viable argument to raise on appeal. See discussion supra at 24-25. In sum, Movant cannot show that counsel was ineffective in negotiating and advising as to the Plea Agreement; nor can Movant show that he suffered actual prejudice by entering into the Agreement.

4.    Ineffective Assistance in Explaining the Factual Stipulation

Movant's final argument is that "[c]ounsel was ineffective in explain[ing] the plea stipulation to an incorrect factual basis for the plea." Motion at 8 (DE 1). According to Movant, the factual stipulation – specifically, as it relates to the time frame of the conspiracy and the quantity of heroin – is erroneous. Id. Movant contends that these facts then provided the basis upon which his sentence was enhanced. Id.

Again, Movant's contention is rebutted by the record of the plea hearing. Movant had ample opportunity at the hearing to object to the accuracy of the stipulation, yet he failed to do so; rather, he agreed "that the facts [set forth in the stipulation] as read to [him] were all true and correct." Plea Hearing at 12 (DE 140 – criminal). In addition, Movant clearly indicated to the Court that he had signed the factual stipulation, evidencing his agreement to its accuracy. Id. Movant has not presented any reason for the Court to now disregard his sworn statements; nor is the undersigned aware of any reason to do so. Given that sworn statements at a plea colloquy carry a strong presumption of verity, see Blackledge, 431 U.S. at 74, a presumption that Movant has done nothing to overcome, his contention that he did not fully understand the stipulation or agree to it accuracy must fail.

31

Nor is Movant correct that the "Stipulated Factual Basis" contained an erroneous drug quantity (over one kilogram of heroin) and an erroneous time frame for the conspiracy (March 2009 to October 14, 2010), which, in turn, gave rise to the enhancements. See Motion at 8 (DE 1). Preliminarily, the undersigned notes that the time frame and drug quantity that Movant now characterizes as incorrect are the identical ones set forth in Count I of the Indictment. See Indictment at 1-2 (DE 22 – criminal). Were these basic facts incorrect, then irrespective of counsel's performance, Movant would never have been able to plead guilty to Count I – be it pursuant to a Plea Agreement or, as Movant suggests, open to the Court. More importantly, at the hearing, the Court received testimony from a DEA agent. The agent's testimony set forth the facts supporting the Government's allegations as to the time frame of the conspiracy and the quantity of heroin. Therefore, even absent the factual stipulation, Movant's sentence would have been enhanced based upon the same time frame and the same quantity of heroin. In sum, Movant cannot show that counsel was deficient with respect to the stipulated basis for the plea or that Movant suffered any prejudice by agreeing to it.

## IV.   CONCLUSION

Movant is unable to overcome the presumption of verity that attached to his sworn statements at the plea hearing. Nor is Movant able to show why the Court's thorough explanations at the same hearing should be disregarded. Accordingly, Movant cannot show that counsel rendered ineffective assistance with respect to the factual stipulation, the appellate waiver, or the sentencing exposure. Further, Movant cannot establish that counsel labored under an actual conflict of interest that impaired his ability to render zealous and effective representation at sentencing. Counsel's written objections to the PSI

and his arguments to the Court plainly rebut that contention. Finally, Movant cannot show that counsel was ineffective in negotiating and advising as to the Plea Agreement. The record is clear that Movant entered into an Agreement to plead guilty to an offense for which the Government possessed overwhelming evidence of his guilt. Although the Agreement required that he waive the right to appeal his sentence, Movant has not shown that he has any argument that would have prevailed on appeal. Moreover, in exchange for his guilty plea and appellate waiver, Movant gained not only the Government's recommendation of an acceptance of responsibility reduction, but also its assurance that it would move for an additional timely notification reduction, to which Movant would not have otherwise been entitled. The undersigned, therefore, RECOMMENDS that the Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (DE 1) be DENIED.[9]

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable James I. Cohn, United States District Judge. Failure to file objections timely shall bar the parties from a *de novo* determination by the district judge of an issue covered in the report and shall bar the parties from attacking on appeal factual findings accepted

---

[9] Where the motion and record conclusively show that a movant is not entitled to relief under § 2255, an evidentiary hearing need not be held. See Fontaine v. United States, 411 U.S. 213, 215 (1973). Based on the record evidence here, an evidentiary hearing in this matter is not warranted.

or adopted by the district court except upon grounds of plain error or manifest injustice.

See 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140, 149 (1985); Henley v. Johnson, 885 F.2d 790, 794 (11th Cir. 1989).

DONE AND SUBMITTED at Fort Lauderdale, this ____ day of June 2013.


BARRY S. SELTZER
Chief United States Magistrate Judge


Copies to:

Honorable James I. Cohn
United States District Judge

Jennifer C. Millien, Esq.
Assistant U.S. Attorney
500 S. Australian Avenue
West Palm Beach, Florida 33401

Courtney Montiero, Esq.
25 SE 2nd Avenue, Suite 1105
Miami, Florida 33131
Attorney for Movant Jose Wilson Ayala